**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Civil Action Number:

ANDRES GOMEZ,
and JUAN CARLOS GIL, On Their Own
Behalf, and On Behalf of All Other
Individuals Similarly Situated,

      Plaintiffs,

vs.

PANERA, LLC

      Defendant

---

**CLASS ACTION COMPLAINT**

---

Plaintiffs Andres Gomez and Juan Carlos Gil, on their own behalf and on behalf of all Other Individuals Similarly Situated, by and through their undersigned counsel, hereby sue Defendant Panera, LLC for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§12181-12189 ("ADA"), 28 C.F.R. Part 36 and allege as follows:

**<u>INTRODUCTORY STATEMENT</u>**

1.      Plaintiffs bring this action in Federal Court to stop the marginalization of blind, vision impaired, and low vison patrons of the Panera Bakeries throughout the United States of America where the law of the American with Disabilities Act has been the law of the land for over twenty-five years.

1

2.      Plaintiffs bring these actions on behalf of themselves and the all other blind patrons to put an end to civil rights violations committed by Defendant Panera, LLC.

3.      This case arise out the fact that Defendant Panera, LLC has operated its business in a manner and way that completely excludes individuals with disabilities who are visually impaired from enjoying and visiting their places of public accommodation, namely Cafés and Bakeries.

4.      Panera, LLC's places of public accommodation are a combination of bakery and café-casual fast-food restaurants (also referenced herein as bakery and café, or bakeries and cafés).

5.      Panera, LLC's website www.panerabread.com is directly connected to its store service and ordering physical locations (places of public accommodation).  Thus, its website www.panerabread.com ("website") has a true nexus to its bakeries and cafés, they are interconnected.

6.      Patronizing bakeries and cafés are experiences enjoyed by the non-visually impaired and the visually impaired alike. Being able to get out in public and enjoy a casual meal in a café with a bakery atmosphere is an important social function that is impaired by Defendant Panera, LLC because of many imposed  barriers to access for its visually impaired patrons.

## JURISDICTION & PARTIES

7.      This is an action to put an end to civil rights violations committed by Defendant Panera LLC against individuals with disabilities who are visually impaired.

8.      This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. § 1331, and 28 C.F.R. § 36.201.

9.      Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendants transact business in this District, and the acts constituting the violation of the ADA occurred in this District.

10.     Plaintiffs seek declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

### Juan Carlos Gil

11.     Plaintiff Juan Carlos Gil ("Plaintiff Gil") is a resident of the state of Florida and resides within the district and is *sui juris*.  Plaintiff Gil suffers from what constitutes as a "qualified disability" under the ADA.   Plaintiff Gil has cerebral palsy, has a learning disability and is legally blind, and therefore is substantially limited in performing one or more major life activities, including but not limited to accurately visualizing his world and adequately traversing obstacles and walking without assistance. Plaintiff Gil's disabilities are defined in 42 U.S.C. §12012(1)(A) and in 42 U.S.C. 3602, §802(h).

### Andres Gomez

12.     Plaintiff Andres Gomez ("Plaintiff Gomez") is a resident of the state of Florida and resides within the district and is *sui juris*. Plaintiff Gomez suffers from what constitutes as a "qualified disability" under the ADA.   Plaintiff Gomez suffers from macular degeneration and is legally blind.  Plaintiff Gomez is substantially limited in

performing one or more major life activities, including but not limited to accurately visualizing his world and adequately traversing obstacles and walking without assistance. Plaintiff Gomez's disability is defined in 42 U.S.C. §12012(1)(A) and in 42 U.S.C. 3602, §802(h).

**Other Plaintiffs Similarly Situated**

13.     Other plaintiffs similarly situated to Plaintiff are qualified individuals with disabilities under, and as defined by, the ADA.

14.     Other plaintiffs are similarly situated to the named Plaintiffs by virtue of the fact that they are disabled with visual impairments and require screen reader software (which is commercially available) in order to comprehend internet websites and acquire information in order to visit places of public accommodation such as Panera, LLC's bakeries and cafés.

15.     Visually impaired individuals enjoy the experience of patronizing bakeries and cafés.  The lack of access to Defendant Panera, LLC's bakeries and cafés caused by Defendant Panera, LLC's inaccessible website is prohibited by the Americans With Disabilities Act.

16.     In addition, other plaintiffs similarly situated are also denied access to Defendant Panera LLC's self-service 'Fast Lane Kiosks' which are essentially iPad[1] kiosks.

17.     Defendant Panera, LLC's iPad kiosks are accessed by a user performing operations on a "**touchscreen device**" to digitally select, order and purchase bakery and

---

[1] Trademark of a touchscreen pad with high quality visual graphics

meal items at the Defendant Panera, LLC's bakeries and cafés (places of public accommodation).

18.     Barriers to access exist because of Panera, LLC's failure to provide an audio interface system, a tactile keyboard, and/or interactive screen reader technology or other auxiliary aids for the visually impaired in order to interface with its self-service iPad kiosks so those visually impaired individuals can access the self-service iPad kiosks set up at Defendant Panera, LLC's places of public accommodation.

19.     The lack of access to Defendant Panera, LLC's bakeries and cafés is caused by its inaccessible iPad™[2] kiosks (designed to order food) and its order delivery system[3] (which is designed to deliver food ordered through the iPad kiosks to the order pick-up shelves) because visually impaired individuals are able to comprehend the iPad kiosks and are unable to navigate the self-service delivery system ("Fast Lane Pick Up section") which designed to deliver food ordered and paid for using the iPad kiosks. These two areas represent barriers to access for individuals with disabilities, which is prohibited by the Americans With Disabilities Act.

**Panera, LLC**

20.     Defendant Panera, LLC (also referenced as Defendant Panera") operates a chain of bakeries and cafés throughout the United States under the "Panera Bread/Panera" brand. Panera, LLC was founded as St Louis Bread Kirkwood Missouri in 1987.  In 1993, Au Bon Pan Co bought the company and rebranded it as "Panera Bread." Au Bon Pan Co sold the Panera Bread segment to Compass Group, and the Panera Bread

---

[2] References throughout refer to the use of iPad as trademarked use of the device, ™.
[3] termed: Fast Lane Pick up section

division now owns and operates or franchises 2,000 bakery and café locations throughout the United States and Canada.

21.     Panera, LLC is a subsidiary of Compass Group.  The parent company (Compass Group) is a British multinational foodservice corporation and is headquartered in the Compass House in Chertsey, Surrey, England.

22.     Compass Group is the largest contract foodservice company in the world and has operations in over fifty (50) countries.  Compass Group serves around 4 billion meals a year in locations including offices and factories, schools, universities, hospitals, major sports and cultural venues, mining camps and offshore oil platforms.  Compass Group is a public company and is listed on the London Stock Exchange and is and is a constituent of the FTSE 100 Index[4].

23.     Defendant Panera's chain of Panera Bread bakeries and cafés operate on the fast-food model, and feature an in-store bakery where fresh bread and other bakery items are made throughout the day.  The food service menu includes soup, sandwiches, and bakery goods as well as specialty coffees made fresh throughout the day.

24.     Defendant Panera has developed, created, and launched a new $42,00,000 USD (forty two million dollar) ordering and delivery system which it has branded "Panera 2.0".

25.     Defendant Panera has marketed Panera 2.0 as a revolutionary customer experience which includes a series of integrated technologies to enhance the dining experience for all of its customers.

---

[4]  FTSC 100 Index is the Financial Times Stock Exchange 100 Index. The FTSE 100 Index is a share index of the 100 companies listed on the London Stock Exchange with the highest market capitalization.

26.    The Panera 2.0 experience is designed to provide its customers with a one-stop digital ordering, payment, operations and delivery (for take-out or consumption on the premises)[5].

27.    In conjunction with its chain of bakeries and cafés the Defendant maintains an internet website known as www.panerabread.com ("website"), which is available to the general public.

28.    While Panera, LLC's headquarters is in Sunset Hills, Missouri, its website is available to the general public in the USDC of Florida Southern District.  As such, its website is used by the general public (patrons of bakeries and cafés) in order to obtain information as to Panera Bread bakery and café locations, menu selection, and to advance order to-go and pay online for its Panera Bread bakeries and cafés in Florida. Therefore, Defendant Panera, LLC is within the and is within the jurisdiction of this court

## FACTS

29.    Each of Defendant Panera, LLC's bakeries and cafés are open to the general public and as such, are places public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §§s 12181(7)(B) and (E) and 28 C.F.R. Part 36, by virtue of the fact that Defendant operates bakeries (42 U.S.C. §12181(7)(E)) and by virtue of the fact that the Defendant operates café-casual fast-food restaurants (cafés) which  offer food and drink to the general public (42 U.S.C. §12181(7)(B)).

30.    Defendant Panera, LLC is defined as a "public accommodation" because it is an entity which owns and operates bakeries, which also serve as establishments serving

---

[5] Reference: Panera Bread  Success Story at Communications Products, Inc. website www.commprod.com

food or drink, and because it owns and operates a website which the general public can order and purchase movie food and drink on a 'to-go' (pick-up) basis.  Each of its bakeries and cafés are "Place(s) of Public Accommodation" according to §12181(7)(E) which state that [P]laces of public accommodation are "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," and according to 42 U.S.C. §12181(7)(B), which state that [P]laces of public accommodation are "[A] restaurant, bar, or other establishment serving food or drink," and 28 C.F.R. § 36.104(2).

## FACTUAL ALLEGATIONS SPECIFIC TO BARRIERS TO ACCESS WITHIN PHYSICAL LOCATIONS

31.     On information and belief, Defendant Panera is well aware of the need to accommodate their customers who are visually impaired, and is aware of the requirements of the ADA for effective communication and access.

32.     As a public accommodation, Defendant Panera must provide appropriate auxiliary aids or services that comply with its effective communication and access obligations. 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. §§s 36.303(a), (c)(1).

33.     Defendant Panera has not provided full and equal access and full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations provided by and through its Panera Bread bakeries and cafés located within the State of Florida and other regions of the United States where they business operations.

34.     Such barriers have resulted in discriminatory and unequal treatment of individuals with disabilities who are suffering from various types of visually impairment.

35.     Such barriers have resulted in segregation of individuals with disabilities who are visually impaired and directly caused a diminished lifestyle and societal ostraization.

36.     As a public accommodation with many places of public accommodation within the United States of America, Defendant Panera is well aware of requirements the need to accommodate their customers who are visually impaired within each of its places of public accommodation.  Further, the Defendant Panera is aware of the requirements of the ADA for effective communication and access.

### iPad[6] Touchscreen Kiosks

37.     Barriers to access include (but are not limited to) Defendant Panera's provision of iPad" touchscreen" kiosks (iPad kiosks) to the general public.



Fig. 1

---

[6] References throughout refer to the use of iPad as trademarked use of the device, ™.

38.     The iPad kiosks permit consumers to (i) view the assortment of bakery items and menu of café food and drink items available for purchase, independently (on their own), (ii) to select and order bakery, café and drink items, (iii) to direct that said items be packaged for take-out or set up in trays for eating and drinking in the Panera bakery and café, and (iv) to purchase of such items.

39.     Defendant Panera has failed to reasonably accommodate the visually impaired and disabled by developing their news iPad kiosks to include a blind interface system which employs an audio interface system, a tactile keyboard, and/or interactive screen reader technology or other auxiliary aids for the visually impaired.

40.     Defendant Panera has failed to provide the minimum ability of the blind to use Panera technologies like other non-vision impaired customers.

41.     Such failure is not only outrageous conduct, the lack of management forethought into building these incapability devises amounts to extreme insensitivity, a *malo arbitio*, but also  is/was willful, malicious, oppressive, and in complete disregard for the rights of the Plaintiffs and in violation of 28 C.F.R. §36.303

42.     Barriers to effective communication include (but are not necessarily limited to) Defendant Panera's failure to reasonably accommodate visually impaired individuals by providing creating their iPad kiosks assistive listening devices (which are readily accessible and that they be maintained in working condition and available on request) to individuals who are visually impaired is/was willful, malicious, and oppressive and in complete disregard for the rights of the Plaintiffs and in violation of 28 C.F.R. §36.303.

43.     In order to take advantage of the benefits afforded to the general public, the Plaintiffs (and each of them) are seeking that Defendant Panera provide assistive listening devices for use together with its iPad kiosks within its Panera Bread bakeries and cafés.

**Fast Lane Pick Up**

44.     Barriers to access also include (but are not limited to) Defendant Panera's Fast Lane Pick Up section, which is used in conjunction with its iPad kiosks, shown below:



Fig. 2

45.     The Fast Lane Pick Up section is not accessible to the visually impaired, as the Defendant has failed to include braille or other signage/method to aid the visually impaired in locating where they may retrieve their completed (ready to-go) orders.

46.     Defendant Panera has failed to reasonably accommodate the visually impaired and disabled by modifying its Fast lane Pick up section to include: 1) a blind interface system which employs an audio interface system, braille on the pick-up shelves, or 2) other auxiliary aids for the visually impaired. Such failure is/was willful, malicious, and oppressive and in complete disregard for the rights of the Plaintiffs and in violation of 28 C.F.R. §36.303.

47.     Barriers to access include Defendant Panera's failure to reasonably accommodate visually impaired individuals by providing braille or other method for distinguishing of orders for the visually impaired at its Fast Lane Pick up section.

48.     In order to take advantage of the benefits afforded to the general public, the Plaintiffs (and each of them) are seeking that Defendant Panera's Fast Lane Pick up section be modified failed to include braille or other method for distinguishing of orders for the visually impaired.

49.     As a public accommodation, Defendant Panera must provide appropriate auxiliary aids or services that comply with its effective communication and access obligations. 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. §§s 36.303(a), (c)(1).

50.     The Plaintiffs (and each of them) desire to return to Defendant Panera's bakeries and cafés, but continue to be injured in that, should they attempt to patronize Defendant Panera's bakeries and cafés in the future, due to the Defendant Panera's lack of supply of assistive listening devices for the visually impaired, they will again be

unable to utilize its iPad kiosks to (i) view the assortment of bakery items and menu of café food and drink items available for purchase, independently (on their own), (ii) to select and order bakery, café and drink items, (iii) to direct that said items be packaged for take-out or set up in trays for eating and drinking in the Panera bakery and café, (iv) to purchase of such items, and (v) retrieve such items from Defendant's Fast Lane Pick Up section.

51.     As a result of Defendant Panera's discrimination resulting in the Defendant's lack of supply of assistive listening devices for the visually impaired and its lack of access to its Fast Lane Pick Up section, the Plaintiffs (and each of them) were unable to use the iPad kiosks, and each were unable to comprehend the  bakery and café food and drink menu on the iPads, and further they were unable to independently (on their own) select and order bakery, café and drink items and direct that said items be packaged for take-out or set up in trays for eating and drinking within the Panera café, purchase such items, and utilize the Fast Lane Pick Up section to retrieve their purchased items.

52.     As to Plaintiffs Gomez, Gill, and other individuals similarly situated, Defendant Panera has failed to make assistive listening devices readily accessible to (and usable by) individuals who are visually impaired, and failed to make its Fast Lane Pick Up section accessible by individuals who are visually impaired.  By failing to furnish appropriate auxiliary aids and services to insure effective communication with patrons who are visually impaired[7], and failing to make its Fast Lane Pick Up section accessible, the Defendant has discriminated against the visually impaired, in derogation of the ADA.

---

[7] Defendant failed to provide auxiliary aids

53.     As a result of, each of the Plaintiffs felt segregated, suffered loss of dignity, mental anguish and other tangible injuries, and each Plaintiff suffered an injury in fact.

54.     The Plaintiffs will continue to suffer irreparable injury from Defendant's intentional acts, policies, and practices set forth herein unless enjoined by the court.

55.     Enforcement of Plaintiffs' rights is right and just pursuant to 28 U.S.C. §§2201, 2202.

56.     Notice to Defendant Panera is not required as a result of Defendant Panera's failure to cure the violations.

57.     Plaintiffs have retained the law offices of Scott R. Dinin, P.A. and have agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

**Facts Specific to Plaintiff Andres Gomez:**

58.     Plaintiff Andres Gomez (Plaintiff Gomez) enjoys the Panera bakery and café experience. As such, Plaintiff Gomez is a customer of Panera bakeries and cafés.

59.     At all times material hereto, as part of its chain of Panera bakeries and cafés, the Defendant Panera owned and operated the Panera Bakery and Café located at 137 Miracle Mile, Coral Gables, Florida.  When referencing the subject location, this location is also referenced as "Panera Coral Gables Bakery and Café."

60.     Within the Panera Coral Gables Bakery and Café, Defendant Panera offers the iPad and Fast Lane Pick Up section.

61.     On March 28, 2016[8], Plaintiff Gomez went to the iPad kiosk section located within the Panera Coral Gables Bakery and Café with the intention of purchasing lunch.

62.     While patronizing the Panera Coral Gables Bakery and Café, the Plaintiff Gomez was unable to access Defendant Panera's iPads at the iPad kiosk section for ordering his lunch independently.  The Plaintiff was unable to comprehend the information which the iPad kiosks displayed for its customers (the general public) as the iPad kiosks were not equipped with auxiliary aids for the visually impaired.

63.     The iPad kiosks are/were not designed and programmed to interface with commercially available screen reader software.

64.     Further, the iPad kiosks were not equipped with auxiliary aids (such as an audio interface system) for disabled individuals who are visually impaired such that visually impaired individuals can receive the same experience in the same manner as the general public.

65.     The iPad kiosks were/are so poorly functional for visually impaired individuals who require auxiliary aids (for disabled individuals who are visually impaired), that any utilization of such iPad kiosks contain barriers that prevent full and equal use by individuals with disabilities who are visually impaired.

66.     Defendant Panera has failed to make the iPad kiosks readily accessible to and usable by individuals who are visually impaired and in so doing has failed to furnish appropriate auxiliary aids and services to insure effective communication with patrons who are visually impaired[9].

---

[8] visit was prior to initiating this instant action
[9] Defendant failed to provide auxiliary aids

67.      Thus, Plaintiff Gomez was denied the ability to independently select and purchase lunch at the Defendant's Panera Coral Gables Bakery and Café. Plaintiff Gomez was unable to enjoy the same ordering and dining experience as sighted patrons of the Defendant's Panera Coral Gables Bakery and Café.

68.      Plaintiff Gomez became distressed, anxious and disappointed, as he was unable to independently comprehend the Panera Coral Gables Bakery and Café menu and independently order and pay for bakery and food products, and he left the Panera Coral Gables Bakery and Café embarrassed and humiliated.

69.      Thus, Defendant Panera has not provided full and equal access and full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations provided by and through its Panera Coral Gables Bakery and Café.

**Facts Specific to Plaintiff Juan Carlos Gil:**

70.      Plaintiff Juan Carlos Gil (Plaintiff Gill) enjoys the Panera bakery and café experience. As such, Plaintiff Gill is a customer of Panera bakeries and cafés.

71.      In March of 2016[10], Plaintiff Gil went to the iPad kiosk section located within the Panera Coral Gables Bakery and Café with the intention of purchasing lunch.

72.      While patronizing Defendant Panera's Coral Gables Bakery and Café, Plaintiff Gil was unable to comprehend the information displayed by the iPad kiosks because the iPad kiosks were not equipped with auxiliary aids for the visually impaired.

73.      Plaintiff Gil was disappointed to discover that the iPad kiosks (which Plaintiff Gomez also visited) were not designed and programmed to interface with commercially available screen reader software and further were not equipped with

---

[10] visit was prior to initiating this instant action

16

auxiliary aids (such as an audio interface system) for disabled individuals who are visually impaired such that Plaintiff Gil was precluded from receiving the same experience in the same manner as the general public.

74.     Further, had Plaintiff Gil been able to purchase lunch using an iPad kiosk, he would not have been able to distinguish which of the cubby's at the Fast Land Pick Up section his lunch had been placed as the Fast Lane Pick Up section is not designed to accommodate the visually impaired with braille or other assistive device.

75.     Plaintiff Gil became distressed and disappointed, as he was unable to enjoy the experience of using the iPad kiosk and Fast Land Pick Up section as sighted customers at the Defendant's Panera Coral Gables Bakery and Café and he left the Panera Coral Gables Bakery and Café embarrassed and humiliated.

76.     Thus, Defendant Panera has not provided Plaintiff Gill with full and equal access and full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations provided by and through its Panera Coral Gables Bakery and Café.

**FACTUAL ALLEGATIONS SPECIFIC TO DEFENDANT'S WEBSITE**

77.     Defendant Panera, LLC's website www.panerabread.com ("website") is offered to provide the general public information including but not limited to information on the various locations of the Defendant Panera Bakeries and Cafés throughout the United States and within the state of Florida.

78.     Among other things, the Defendant's website also provides the general public the menu selection, prices, and the ability to advance order to go.

79.     Since the Defendant Panera's bakeries and cafés are places of public accommodation and they are serviced by Defendant's website, the website is also characterized as a place of public accommodation (42 U.S.C. §§S 12181(7)(B) and (E)), and has a direct nexus between the site and its stores.

80.     The website allows the general public access to the food, drink, and bakery menu, and the ability to purchase food, drink, and bakery items on online in a substantially similar way as if an individual were to purchase food, drink and bakery items from one of the Defendant Panera's bakery and café locations.  As such, the website is a service, which is a public accommodation; 42 U.S.C. §§s 12181(7)(B) and (E) and must comply with the ADA, which means it must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the services afforded to the general public.  As such, Defendant Panera has subjected itself and the website it has created and maintains, to the Americans with Disabilities Act ("ADA").[11]

81.     For many individuals with disabilities who are limited in their ability to travel outside their home, the internet is one of the few available means of access to the goods and services in our society. The broad mandate of the ADA to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet websites, such as Defendant Panera's website.

---

[11] "*The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities.*" ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

82.     Plaintiffs Gomez and Gil are customers of bakeries and cafés such as Panera Bakeries and Cafés.

83.     Plaintiffs Gomez and Gil frequently utilize the internet. In order to comprehend information available on the internet and access/comprehend websites, Plaintiffs Gomez and Gil use commercially available screen reader software to interface with the various websites.

84.     In order to comprehend Defendant Panera's website and to become informed of the bakery and café locations, menu and bakery items, and to food, drink, and bakery items online for in store pick up, which the general public may do online, Plaintiffs Gomez and Gil must use screen reader software.

85.     Both Plaintiffs Gomez and Gill attempted to utilize the Defendant's website.  However, the Defendant's website did not integrate with either of the Plaintiff's screen reader software so Plaintiffs Gomez and Gill were barred from accessing the Defendant's website.

86.     The Defendant's website does not provide screen reader software or other means to accommodate the visually impaired, nor does it interface with screen reader software in order that visually impaired individuals can comprehend the website.

87.     Plaintiffs Gomez and Gil each continue to desire to patronize the Defendant's website, but are unable to do so as they are each unable to comprehend the Defendant's website, thus they will continue to suffer irreparable injury from the Defendant's intentional acts, policies, and practices set forth herein unless enjoined by this Court.

88.     The Defendant's website did\does not offer an adequate system to permit a disabled person with a visual impairment (who requires screen reader software) to comprehend its website in an effective manner.

89.     The Defendant's website is\was not designed and programmed to interface with commercially available screen reader software for disabled individuals who are visually impaired in the same manner as the website is offered to the general public.

90.     The Defendant's website is\was so poorly functional for visually impaired individuals who require screen reader software, that any utilization of the website contains barriers that prevent full and equal use (of the website) by individuals with disabilities who are visually impaired.

91.     On information and belief, the Defendant has not designated an employee as a Web Accessibility Policy to insure full and equal use of its website by individuals with disabilities.

92.     On information and belief, the Defendant has not instituted a Web Accessibility Committee to insure full and equal use of its website by individuals with disabilities.

93.     On information and belief, the Defendant has not designated an employee as a Web Accessibility Coordinator to insure full and equal use of its website by individuals with disabilities.

94.     On information and belief, the Defendant has not instituted a Web Accessibility User Accessibility Testing Group to insure full and equal use of its website by individuals with disabilities.

95.     On information and belief, the Defendant has not instituted a User Accessibility Testing Group to insure full and equal use of its website by individuals with disabilities.

96.     On information and belief, the Defendant has not instituted a Bug Fix Priority Policy.

97.      On information and belief, the Defendant has not instituted an Automated Web Accessibility Testing program.

98.     On information and belief, the Defendant has not created and instituted a Specialized Customer Assistance line, nor service, or email contact mode for customer assistance for the visually impaired.

99.     On information and belief, the Defendant has not created and instituted on its website a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how the Defendant will have its website, Applications, and Digital Assets accessible to the visually impaired community.

100.     On information and belief,  Defendant's website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Basic Level of web accessibility[12]

101.     Thus, the Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages and accommodations provided by and through its website www.panerabread.com.

102.     On information and belief, the Defendant is aware of these common access barriers within its website which prevent individuals with disabilities who are

---

[12] developed by the Web Accessibility Initiative (WAI) working group of the World Wide Web Consortium which defined how to make Web content more accessible to people with disabilities (W3C)

visually impaired from the means to comprehend its website to become informed of its bakery and café locations, menu and bakery items, and to advance order food, drink and bakery items for pick up in store at the Defendants' places of public accommodation (Panera Bakeries and Cafés).

103.    Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired.

104.    Such barriers result in punishment and isolation of  blind and low vision from the rest of society.

105.    Thus, the Defendant has refused to make its website accessible to individuals with disabilities who are visually impaired.

106.    Enforcement of the Plaintiffs' rights is right and just pursuant to 28 U.S.C. §§2201, 2202.

## CLASS ACTION ALLEGATIONS

107.    Plaintiffs Gomez and Gil bring this case as a class action pursuant to Federal Rule of Civil Procedure Rule 23, in that the class is so numerous that joinder of all members is impracticable, there are questions of law and fact common to the class [F.R.C.P. Rule 23(a)(1)], the claims and defenses of the representative party is typical of those of the class [F.R.C.P. Rule 23(a)(3)], and Plaintiffs Gomez and Gil (as representative parties) will fairly and adequately protect the interests of the class [F.R.C.P Rule 23(a)(4)].

108.    Defendant Panera LLC's website supports and supplements its chain of Panera Bakeries and Cafés, which are places of public accommodation.

109.     According to the National Federation for the Blind[13], there are 6,670,300 Americans with visual disabilities within the United States and 434,600 within the state of Florida.

110.     Thus, the Class of Others Similarly Situated to Plaintiffs Gomez and Gil, which is to be represented by Plaintiffs Gomez and Gil is so numerous (434,600 visually impaired Americans in the state of Florida and 5,603,052 visually impaired Americans throughout the United States) that a joinder of each individual member is impracticable; F.R.C.P. Rule 23(a)(1).

111.     Plaintiffs Gomez and Gil are representative of the Class due to the fact that they each suffer from a qualified disability in that they are both visually impaired and require screen reader software interface in order to comprehend and effectively communicate with public accommodations on the internet, such as the Defendant Panera's website.

112.     Defendant Panera has discriminated against Plaintiffs Gomez and Gil and the members of the Class by denying effective communication through its website.

113.     Plaintiffs  Gomez and Gil are representative of the Class due to the fact that they each suffer from a qualified disability in that they are both visually impaired and require a blind interface system which employs an audio interface system, a tactile keyboard, and/or interactive screen reader technology or other auxiliary aids for the visually impaired in order to utilize the iPad kiosks which the Defendant has provided for the general public in order to (i) view the assortment of bakery items and menu of café food and drink items available for purchase, independently (on their own), (ii) to select and order bakery, café and drink items, (iii) to direct that said items be packaged for take-

---

[13] Statistics for 2012, see http://www.NFB.org/blindness-statistics

out or set up in trays for eating and drinking in the Panera bakery and café, and (iv) to purchase of such items.

114.    Plaintiffs Gomez and Gil are representative of the Class due to the fact that they each were barred from access to the use of the Defendant's Fast Lane Pick Up section, which is used in conjunction with its iPad kiosks. The Fast Lane Pick Up section is not accessible to the visually impaired, as the Defendant has failed to include braille or other method for distinguishing of orders for the visually impaired.

115.    Defendant Panera has discriminated against Plaintiffs Gomez and Gil and the members of the Class by barriers to access caused by its iPad kiosks and by its failure to provide effective means of communication by failing to provide assistive listening devices for its iPad kiosks, and by barriers to access in the Defendant's Fast Lane Pick Up section.

116.    The questions of law and fact relating to the representative Plaintiffs Gomez and Gil are similar and common to the law and fact questions which would be raised by other members of the Class if they were individually named plaintiffs herein.

117.    Similarly, the claims and defenses to be raised by and against the parties herein are typical of the claims or defenses which would be raised by the members of the Class if they were a party to this action.

118.    Plaintiffs Gomez and Gil seek injunctive relief for the implementation of the relief provide by the ADA which is the same relief which would be sought by each class member if he or she brought a claim individually.  Accordingly, Plaintiffs Gomez and Gil (as representative parties for the Class) will fairly and adequately protect the interests of the Class.

119.     The relief sought herein is for the benefit of all members of the Class and consistent injunctive relief should be provided for each member of the Class.

120.     Prosecution of this matter by individual members of the Class would only create a risk of inconsistent and varying adjudications and the establishment of incompatible standard by the Defendant and adjudication which may be dispositive of the interest of the other Class members.

121.     The questions of law and fact common to the members of the Class, such as the degree of non-compliance, which will be raised and adjudicated herein, predominate over any questions affecting only the individual Plaintiffs or individual members of the Class. As a result, this class action is the optimal method for reaching a fair and efficient adjudication of the controversy raised herein.

122.     Defendant Panera has failed to provide any mechanism by which to adequately serve visually impaired individuals such as Plaintiffs Gomez and Gil and others similarly situated. The Defendants are operating in violation of Plaintiffs' rights as protected by the ADA and Plaintiffs are entitled to injunctive relief. 42 U.S.C. §12188.

123.     Plaintiffs Gomez and Gil and others similarly situated have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for declaratory judgment and injunctive relief is their only means to secure adequate redress from Defendant Panera's unlawful and discriminatory practices.

124.     Plaintiffs Gomez and Gil and others similarly situated will continue to suffer irreparable injury from Defendant Panera's intentional acts, policies, and practices set forth herein unless enjoined by the court.

125.    Notice to Defendant Panera is not required as a result of their failure to cure the violations.

## **VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT**

126.    The Americans with Disabilities Act ("ADA") is landmark civil rights legislation that is the result of decades of advocacy to improve the lives and role in society of all persons with disabilities.  The ADA was enacted and effective as of July 26, 1990.

127.    The ADA legislation has been protecting disabled persons from discrimination due to disabilities, and eliminate barriers for over a quarter of a century.

128.    "Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals." PGA Tour, Inc. v. Martin, 532 U.S. 661, 674 (2001). "After thoroughly investigating the problem, Congress concluded that there was a compelling need for a clear and comprehensive national mandate to eliminate discrimination against disabled individuals, and to integrate them into the economic and social mainstream of American life." PGA Tour, 532 U.S. at 675 (2001) (internal quotation marks omitted).

129.    According to the National Federation for the Blind[14] , there are 6,670,300 Americans with visual disabilities, and 434,600 within the state of Florida.

130.    The House Committee on Education and Labor stated that it intended "that the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times," and that technological advances "may require public accommodations to provide

---

[14] Statistics for 2012, see http://www.NFB.org/blindness-statistics

auxiliary aids and services in the future which today would not be required because they would be held to impose undue burdens on such entities." H.R. Rep. No. 101-485, pt. 2, at 108 (1990).

## COUNT I:  ASSISTIVE TECHNOLOGIES / BARRIERS TO ACCESS ADA VIOLATIONS

131.    Plaintiffs Andres Gomez and Juan Carlos Gil, on their own behalf and on behalf of all Other Individuals Similarly Situated re-allege and incorporate by reference the allegations set forth in ¶¶s 1–76 and ¶¶s 107-136 above.

132.    Title III regulations require that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1), 42 U.S.C. § 12182(b)(2)(A)(iii).

133.    The regulations set forth numerous examples of "auxiliary aids and services," including "accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision." 28 C.F.R. §36.303(b).

134.    The term "auxiliary aids and services" also includes the "[a]cquisition or modification of equipment or devices; and [o]ther similar services and actions." *Id.* And, particularly significant here, the Title III regulation further requires that "[i]n order to be effective, *auxiliary aids* and services *must be provided in accessible formats and in a timely manner*.." *Id.* (emphasis added).

135.    Defendant Panera provides its customers new technology service which it has branded "Panera 2.0."  Panera 2.0 consists of iPad kiosks which permit consumers to

(i) view the assortment of bakery items and menu of café food and drink items available for purchase, independently (on their own), (ii) to select and order bakery, café and drink items, (iii) to direct that said items be packaged for take-out or set up in trays for eating and drinking in the Panera bakery and café, and (iv) to purchase of such items.

136.    The Panera 2.0 order delivery system consists of a designated area called "Fast Lane Pick Up." However the Fast Lane Pick Up section is not accessible to the visually impaired as the Defendant has failed to include braille or other method to aid the visually impaired in order that they may distinguish the cubby space where their completed orders would be placed for pick up orders.

137.    Because Defendant Panera, LLC ("Panera") has chosen to not provide assistive technologies in conjunction with its iPad kiosks and has chosen not to include braille or other method to aid the visually impaired in its Fast Lane Pick Up section, visually impaired patrons are unable to independently utilize the Panera 2.0 dining and ordering experience offered at Defendant Panera's bakeries and cafés.  Thus, customers who are blind or have low vision cannot utilize Panera 2.0 technology and experience.

138.    As a result of the inaccessibility of the iPad kiosks and the Fast Lane Pick Up section at Defendant Panera's bakeries and cafés and by the barriers to access inherent with the iPad kiosks and the Fast Lane Pick Up section (when removal of those barriers is readily achievable), Defendant Panera has denied individuals with disabilities who are visually impaired full and equal enjoyment of goods, information, and services that Defendant Panera has made available to the general public, in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq. and 28 C.F.R. §36.302 et. seq.

139.   In order to comply with the ADA, Defendant Panera must furnish auxiliary aids or services that enable individuals to equally and independently benefit from the Panera 2.0 technology and experience at its Panera bakeries and cafés and that enable individuals to equally and independently benefit from the iPad kiosks and Fast Lane Pick Up section, unless doing so would result in a fundamental alteration or undue burden. *See* 28 C.F.R. § 36.303(a).

140.   As a result of the lack of availability of accessible iPad kiosks and Fast Lane Pick Up section within Defendant Panera's bakeries and cafés, the Defendant has set up barriers to access and barriers to effective communication. Removal of those barriers is readily achievable by supplying readily available assistive technologies for iPad kiosks and Fast Lane Pick Up section for the visually impaired at its bakeries and cafés[15].

141.   By Defendant Panera's failure to provide accessible iPad kiosks with auxiliary aids, Defendant Panera has denied individuals with disabilities who are visually impaired full and equal enjoyment of goods, information, and services that it has made available to the general public, in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq. and 28 C.F.R. §36.302 et. seq.

142.   Plaintiffs Andres Gomez and Juan Carlos Gil have each suffered injuries in fact.  Pursuant to §12181(7)(E) each of Defendant Panera's bakeries and cafés  is a *place of public accommodation* under the ADA because each a bakery.  Pursuant to 42 U.S.C. §12181(7)(B) each of Defendant Panera's bakeries and cafés  is a *place of public accommodation* because each is "[A] restaurant, bar, or other establishment serving food or drink."  Therefore, Defendant Panera must be in compliance with the ADA.

---

[15] location as delineated within this complaint

143. Defendant Panera has systematically violated the ADA (and continues to violate the ADA) by denying access to individuals with disabilities who are visually impaired and who require the assistance in the use of Panera 2.0s  iPad kiosks and Fast Lane Pick Up section which Defendant Panera offers to the general public at its bakeries and cafés.

144. Defendant Panera's failure is based upon the simple fact that it has failed and refused to provide assistive devices for use with its iPad kiosks and assistive aids for its Fast Lane Pick Up section for visually impaired individuals who patronize its Panera bakeries and cafés.  These violations are ongoing.

145. As a result of Defendant Panera's wrongful conduct, the Plaintiffs are entitled to injunctive relief pursuant to 42 U.S.C. §12133 to remedy the discrimination.

146. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant the Plaintiffs' injunctive relief; including an order to:

   a) Require that Defendant Panera adopt and implement a system to provide and maintain assistive devices for the visually impaired in conjunction with its iPad kiosks within its bakeries and cafés such that patrons who are visually impaired will be able to utilize the iPad kiosks to (i) view the assortment of bakery items and menu of café food and drink items available for purchase, independently (on their own), (ii) to select and order bakery, café and drink items, (iii) to direct that said items be packaged for take-out or set up in trays for eating and drinking in the Panera bakery and café, and (iv) to purchase of such items;

b) Require that Defendant Panera cease and desist discriminatory practices and, if necessary, to cease and desist offering the Panera 2.0 viewing, ordering, payment and delivery system at its the Panera bakeries and cafés (each being a place of public accommodation) until the requisite modifications are made;

c) Require that Defendant Panera adopt and implement a blind interface system which employs an audio interface system, a tactile keyboard, and/or interactive screen reader technology for its iPad kiosks such that individuals who are visually impaired have full and equal access to the Panera 2.0 system;

d) Require that Defendant Panera adopt and implement a blind interface system for its Fast Lane Pick Up section; and

e) Require that Defendant Panera cease and desist discriminatory practices and, if necessary, to cease and desist offering the Panera 2.0 system of iPad kiosks and Fast Lane Pick Up section at its places of public accommodation until the requisite modifications are made such that the iPad kiosks and Fast Lane Pick Up section are equally accessible to persons with disabilities.

143.    Plaintiffs Andres Gomez and Juan Carlos Gil have been obligated to retain the undersigned counsel for the filing and prosecution of this action.  The Plaintiffs are entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant Panera, LLC.

WHEREFORE, Plaintiffs Andres Gomez and Juan Carlos Gil hereby demand judgment against Defendant Panera, LLC and request the following injunctive and declaratory relief:

a)      The Court issue a declaratory judgment that Defendant Panera, LLC has violated Plaintiffs' rights as guarantee by the ADA;

b)      The Court enter an Order granting temporary, preliminary and permanent injunction prohibiting the Defendant Panera, LLC from offering its Panera 2.0 system of iPad kiosks and Fast Lane Pick Up section without adequate accommodation of assistive devices for the visually impaired community;

c)      The Court enter an Order requiring the Defendant Panera, LLC to remove barriers in order that individuals with visual disabilities are accommodated and able to utilize its Panera 2.0 system of iPad kiosks and Fast Lane Pick Up section at Defendant Panera, LLC's bakeries and cafés to the same extent as the general public, as required by Title III of the ADA by: (i) providing assistive devices for its iPad kiosks and Fast Lane Pick Up section to remove barriers in order that individuals with visual disabilities can access the kiosks to the same extent as the general public;

d)      The Court enter an order requiring Defendant  Panera, LLC to provide ongoing support for assistive devices for visually impaired individuals for its iPad kiosks by implementing hardware and software accessible for visually impaired individuals and providing for accessibility feedback to insure compliance thereto; and

e)      The Court enter an Order directing Defendant Panera, LLC to evaluate and neutralize its policies, practices, and procedures toward persons with disabilities, for such reasonable time so as to allow Defendant Panera, LLC to undertake and complete corrective procedures such that individuals with visual disabilities will have the same access as the general public at the Defendant Panera, LLC's bakeries and cafés;

f)      The Court award reasonable attorney's fees, compensatory damages, all costs (including, but not limited to court costs and any expert fees), and other expenses of suit, to the Plaintiffs; and

g)      That the Court award such other and further relief as it deems necessary, just and proper.

## COUNT II: WEBSITE VIOLATIONS

144.      Plaintiffs Andres Gomez and Juan Carlos Gil,  on their own behalf and on behalf of all Other Individuals Similarly Situated re-allege and incorporate by reference the allegations set forth in ¶¶s 1- 36, and ¶¶s 77-130 above.

145.      The Department of Justice has long taken the position that both State and local government websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities[16].

---

[16] See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice  - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

146.    As a result of the inaccessibility of Defendant Panera's website and by the barriers to access in its website (when removal of those barriers is readily achievable), Defendant Panera has denied individuals with disabilities who are visually impaired full and equal enjoyment of the information and services that Defendant Panera has made available to the general public in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

147.    Pursuant to 42 U.S.C. 12181(7)(B) and (E), Defendant Panera's website is a *place of public accommodation* under the ADA because it serves to augment its chain of Panera's bakeries and cafés by providing the general public information on the various locations of Defendant Panera's chain of bakeries and cafés, menu selections and the ability to purchase food and drinks as well as to purchase gift cards online.

148.    As such, Defendant Panera's website must be in compliance with the ADA.  However, Defendant Panera's website is\was not in compliance with the ADA. Plaintiffs Gomez and Gil and others similarly situated have suffered an injury in fact because of the website's (and Defendant Panera's) non-compliance with the ADA.

149.    Types of website programming errors include (but are not limited to) *Programming Error Types* ("PETs"), which are easily identifiable and correctable, and *Programing Alert Error Types* ("PATs"), which prone to making the website inaccessible.

147.    A sampling review of just part of Defendant Panera's website revealed that the website is not functional for users who are visually impaired.  The Defendant's website contains three types of PETs (easily identifiable and correctable), which occur on each and every page of the website:

34

1)  The language of the document is not identified,
2)  Image alternative text is not present, and
3)  A form control does not have a corresponding label.

148.   Further, the Defendant's website contains seven types of PATs (prone to making the website inaccessible), which occur on each and every page of the website:

1)  Alternative text is likely insufficient or contains extraneous information,
2)  An event handler is present that may not be accessible,
3)  A heading level is skipped,
4)  Flash content is present,
5)  Adjacent links go to the same URL,
6)  A link contains no text, and
7)  Alternative text is likely insufficient or contains extraneous information.

150.   More violations may be present on other pages of the website, and they will be determined and proven through the discovery process.

151.   Further, the Defendant's website did\does not offer include the universal symbol for the disabled[17] which would permit disabled individuals to access the website's accessibility information and accessibility facts.

152.   Therefore, due to the Plaintiffs Gomez and Gill's disabilities and the Defendant's failure to have the website adequately accessible to individuals with visual impairments, Plaintiffs Gomez and Gill were unable to comprehend the Defendant's website.

153.   Defendant Panera has violated the ADA (and continues to violate the ADA) by denying access to individuals with disabilities who are visually impaired and

---

[17] 

who require the assistance of interface with screen reader software to comprehend and access internet websites.  These violations are ongoing.

154.    As a result of Defendant Panera's inadequate development and administration of its website, Plaintiffs Gomez and Gil and others similarly situated are entitled to injunctive relief pursuant to 42 U.S.C. §12133 to remedy the discrimination.

155.    Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiffs Gomez and Gil and others similarly situated injunctive relief; including an order to:

   a) Require Defendant Panera LLC to adopt and implement a web accessibility policy to make publically available and directly link from the homepage of www.panerabread.com to a statement as to Panera LLC's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its website, and

   b) Require Defendant Panera LLC cease and desist discriminatory practices and if necessary to cease and desist operations of the website known as www.panerabread.com until the requisite modifications are made such that its website becomes equally accessible to persons with disabilities.

156.    Plaintiffs Gomez and Gil have been obligated to retain the undersigned counsel for the filing and prosecution of this action.  The Plaintiffs and others similarly situated are entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant Panera LLC.

WHEREFORE, Plaintiffs Andres Gomez and Juan Carlos Gil on their own behalf and on behalf of all other Individuals Others Similarly Situated hereby demand judgment against Defendant Panera LLC  and request the following injunctive and declaratory relief:

a) The Court issue a declaratory judgment that Defendant Panera LLC has violated the Plaintiffs' rights as guaranteed by the ADA;

b) The Court enter an Order granting temporary, preliminary and permanent injunction prohibiting Defendant Panera LLC from operating its website www.panerabread.com without adequate accommodation for the visually impaired community;

c) The Court enter an Order requiring Defendant Panera LLC to update website towww.panerabread.com remove barriers in order that individuals with visual disabilities can access the website to the full extent required by the Title III of the ADA.

d) The Court enter an Order requiring Defendant  Panera LLC to clearly display the universal disabled logo[18] within its website, wherein the logo would lead to a page which would state Panera LLC's accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to insure that individuals who are disabled are aware of the availability of the accessible features of website www.panerabread.com;

---



[18]

e)      The Court enter an order requiring Defendant Panera LLC to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

f)      The Court enter an Order directing Defendant Panera LLC to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow Defendant Panera LLC to undertake and complete corrective procedures to website known as www.panerabread.com.

g)      The Court award reasonable attorney's fees, compensatory damages, all costs (including, but not limited to court costs and any expert fees), and other expenses of suit, to the Plaintiffs; and

h)      That the Court award such other and further relief as it deems necessary, just and proper.

Dated this 20th day of April, 2016.

Respectfully submitted,

*/s/Scott Dinin*
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
*Counsel for Plaintiff*